UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL L. JOHNSON,                          Case No. 1:20-cv-157
    Plaintiff,

                                Hopkins, J.
    vs.                                      Litkovitz, M.J.

BRYAN LAWLESS,                               **REPORT AND**
    Defendant.                               **RECOMMENDATION**

Plaintiff, an inmate at the Toledo Correctional Institution, filed this pro se civil rights complaint pursuant to 42 U.S.C. § 1983 alleging violations of his First and Eighth Amendment rights while incarcerated at the Southern Ohio Correctional Facility (SOCF).[1] Plaintiff alleges that defendant used excessive force against him during a cell search pat down and retaliated against him for filing grievances against corrections officers. This matter is before the Court on defendant's motion for summary judgment (Doc. 105), plaintiff's response in opposition/cross-motion for summary judgment[2] (Doc. 107), plaintiff's supplemental memoranda regarding summary judgment (Docs. 110, 111), and defendant's reply memorandum (Doc. 112).

## I. Background

On March 10, 2018, defendant Bryan Lawless and fellow SOCF corrections officer Michael Bailey conducted a search of plaintiff Michael Johnson's cell. Lawless asked Johnson to "cuff up" and back out of the cell, and Johnson complied. This is where their descriptions of the cell search diverge.

---

[1] Plaintiff's remaining claims were dismissed on sua sponte screening of the complaint pursuant to sections 804 and 805 of the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). (Docs. 9, 20).

[2] The Court previously construed pro se plaintiff's September 7, 2022 filing (Doc. 107) as a cross-motion for summary judgment and his September 14, 2022 filings (Docs. 110 and 111) as supplemental memoranda in support of his summary judgment motion. (Doc. 113 at PAGEID 1501-02).

According to Johnson, he was standing peacefully with his hands in handcuffs behind his back when Lawless patted him down with such force that it knocked him off balance and he had to "stand stronger." (Doc. 111 at PageID 1475). Johnson complied with Lawless's instruction to kick off his shower shoes to be searched, but Lawless pushed Johnson's face forward against the wall while using racial slurs and telling Johnson that Johnson would not file a lawsuit against him. (*Id.*). As Johnson attempted to put his shower shoes back on, Lawless pushed him and forced his hands to shoulder level behind his back while forcibly walking Johnson down the range and into the shower. (*Id.*).

According to Lawless, Johnson refused to face forward during the pat down, and he refused to take off his shower shoes while using aggressive and offensive language toward the corrections officers. (Doc. 104-1 at PAGEID 1260; Doc. 105-1 at PAGEID 1311). Johnson reluctantly complied with Lawless's second order to remove his shoes, but Johnson again turned toward the officers rather than facing forward as instructed. (Doc. 105-1 at PAGEID 1311). Lawless then used his right hand to secure Johnson against the cell wall while Officer Bailey examined Johnson's shoes. (*Id.*). Once the shoes had been inspected, Lawless ordered Johnson to put the shoes on, but Johnson "refused and continued to be argumentative pulling away from" Lawless. (*Id.*). Lawless attempted to hold Johnson's left hand and elbow to escort him, but Johnson "continued to pull away and refuse orders to stop causing [Lawless's] hand to slip." (*Id.*). "To regain control of the situation with [Johnson] still pulling away and turning, [Lawless] placed [his] right arm across [Johnson's] upper back securing [Johnson's] right shoulder and escorted him to the shower." (*Id.*).

According to Bailey, Johnson refused Lawless's order to stay facing the wall while being patted down as part of the cell search. (Doc. 105-1 at PAGEID 1312). Lawless secured Johnson

2

against the wall, but Johnson "continued to refuse, turning again." (*Id.*)  Lawless then attempted

to escort Johnson to the shower, but "Johnson turned again in an aggressive nature and began

cursing at us." (*Id.*)  Lawless then employed an "escorting technique, and we escorted the

inmate to the shower." (*Id.*)

A medical officer examined Johnson with his shirt removed immediately following the

incident. (Doc. 105-1 at PAGEID 1312).  The examination revealed a "[s]mall superficial

scratch" on Johnson's left hand approximately one-sixteenth inch long with no bleeding,

swelling, or signs of infection. (*Id.*)  In addition, Johnson had a "[s]mall abrasion to right elbow"

approximately one centimeter in diameter with no bleeding, swelling, or signs of infection. (*Id.*).

According to Johnson, the medical staff that examined him following the incident

ignored handcuff injuries suffered on both wrists and underreported the severity of the cut on his

elbow. (Doc. 105-3 at PAGEID 1347).  Johnson further stated that medical staff ignored his

report that his feet hurt and refused to supply him with a Band-Aid or ointment. (*Id.*).

Security footage captured the incident in its entirety. (Doc. 95, DVR 109-18).  According

to the video evidence, Johnson "cuffed up" with his hands behind his back and exited the cell

voluntarily.  He cooperated with the pat down.  During the brief pat down, Johnson took a small

step in response to the momentum of Lawless's pat down, but he was not pushed or forcibly

moved.  Johnson turned to speak with Lawless and Bailey.  The video lacks an audio component

so it is impossible to determine the words that were exchanged.  Johnson kicked off his shower

shoes, and Lawless put his hand against Johnson's back pressing Johnson's face and upper body

against the cell wall.  However, Lawless did not do so forcefully, and there was no struggle

visible at that point.  When Bailey put the shower shoes back down by Johnson's feet, more

words were exchanged.  Johnson began to step into the shoes while turning his body away from

the cell wall and toward the range. Lawless then lifted Johnson's cuffed hands and put his right

arm between Johnson's cuffed hands and back and onto Johnson's right shoulder. Lawless

forcibly escorted Johnson down the range directly toward the video camera and into the shower

room. Johnson does not appear to resist significantly, and there are no injuries visible on any of

the men. (*Id.*).

## II.    Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court

demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of

summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v.*

*Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all

inferences drawn therefrom, in the light most favorable to the non-moving party. *Id.*; *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v.*

*OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000). "[W]here, as here, the parties present video

evidence, [the Court] 'view[s] the facts in the light depicted by the videotape.'" *Ison v. Madison*

*Loc. Sch. Dist. Bd. of Ed.*, 3 F.4th 887, 892 (6th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S.

372, 381 (2007)); *White v. Erdos*, No. 21-3169, 2022 WL 554065, at *2 (6th Cir. Jan. 28, 2022).

The trial judge's function is not to weigh the evidence and determine the truth of the

matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at

249. The trial court need not search the entire record for material issues of fact, *Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.  "When

opposing parties tell two different stories, one of which is blatantly contradicted by the record, so

that no reasonable jury could believe it, a court should not adopt that version of the facts for

purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380

(2007).  However, "[f]acts that are not blatantly contradicted by [the evidence] remain entitled to

an interpretation most favorable to the non-moving party." *Coble v. City of White House*, *Tenn.*,

634 F.3d 865, 870 (6th Cir. 2011).  "In response to a properly supported summary judgment

motion, the non-moving party 'is required to present some significant probative evidence which

makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v.*

*Montgomery Cty. Jail Med. Staff Pers*., 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting

*Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

      A fact is "material" if its resolution will affect the outcome of the lawsuit.  *Beans v. City*

*of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd,* No.

17-3088, 2017 WL 3726755 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 248).  The party who

seeks summary judgment "bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of [the record] which it believes demonstrate

the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 322.  To make its

determination, the court "need consider only the cited materials, but it may consider other

materials in the record."  Fed. R. Civ. P. 56(c)(3).  The party opposing a properly supported

motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp. 2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)).

## III.    Eighth Amendment Claim

Plaintiff initiated this action pursuant to 42 U.S.C. § 1983, which prohibits any person "under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving a United States citizen "of any rights, privileges or immunities secured by the constitution and laws." To prevail on a § 1983 claim, a plaintiff must demonstrate "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

A convicted prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "core judicial inquiry" whenever a prison official stands accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Eighth Amendment excessive force claims include both a subjective and an objective component.  *Cordell v. McKinney*, 759 F.3d 573, 580-81 (6th Cir. 2014); *see also White v. Erdos*, No. 21-3169, 2022 WL 554065 (6th Cir. Jan. 28, 2022).  The subjective component focuses on the prison official's state of mind, while the objective component analyzes whether the pain inflicted on the prisoner was "sufficiently serious."  *Cordell*, 759 F.3d at 580.  In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the responsible official; and the extent of the injury inflicted.  *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 320-321.  Corrections officers do not violate a prisoner's Eighth Amendment rights when they use force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell,* 93 F. App'x 723, 725 (6th Cir. 2004)) (defendant corrections officers applied force—spraying the prisoner with pepper spray—in a "good faith effort to maintain or restore discipline, not to maliciously cause pain," where the prisoner repeatedly disobeyed the officers' direct orders to "sit cross-legged on his bunk and face the wall").

"While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell*, 759 F.3d at 580-81 (citing *Wilkins*, 559 U.S. at 37).  "When prison officials maliciously and sadistically use force to cause harm . . ., contemporary standards of decency always are violated . . . whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than

7

some arbitrary quantity of injury." *Wilkins,* 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9).  The

absence of a serious injury is nonetheless relevant as a factor that suggests whether the use of

force may "plausibly have been thought necessary" in a given situation.  *Id*. (quoting *Hudson,*

503 U.S. at 7).  "[D]e minimis uses of physical force do not satisfy the objective component, as

long as the use of force is not of a sort repugnant to the conscience of mankind." *Bullocks v.*

*Hale*, No. 20-3428, 2021 WL 1578198, at *2 (6th Cir. Mar. 1, 2021) (quoting *Hudson v.*

*McMillian*, 503 U.S. 1, 10 (1992) (internal quotation marks omitted).

In this case, Johnson has failed to offer evidence sufficient to raise a genuine issue of

material fact on either the subjective or objective component of his Eighth Amendment claim.

The entire use of force was captured on video, and the video evidence reveals nothing that could

be described as "malicious" or "sadistic."  While the need to use force appeared to be relatively

minor, the amount of force employed was equally slight.  Because the video evidence lacks an

audio component, the Court cannot discern the words exchanged and whether the exchange

increased or decreased the threat reasonably perceived by Lawless and Bailey.[3]  However, the

video depicts nothing more than a good-faith effort to maintain or restore discipline, so plaintiff

has failed to establish a genuine issue of material fact concerning the subjective component.

Even if Johnson could satisfy the subjective component, he has failed to offer evidence

sufficient to raise a genuine issue of material fact on the objective component of his Eighth

Amendment claim.  The injuries he suffered were de minimis.  The medical exam report

---

[3] Defendant relies on a purported Inmate Use of Force Statement dated March 10, 2018 and witnessed by Lt. B.
Dyer to establish that Johnson himself "caused a security issue by refusing orders, becoming belligerent, and pulling
away."  (Doc. 105 at PAGEID 1298).  The statement to which defendant refers states, in its entirety:
> I was being pat down and c/o use excessive force putting me in shower.  He didn't have to jus (sic)
> because I didn't want to comply with his dumbass pat down search, so fuck no I didn't comply to
> his bitch ass pat down.
(Doc. 105-1 at PAGEID 1321).  However, Johnson denies that he wrote that statement.  (Doc. 107 at PAGEID
1419).  Therefore, the Court did not consider that statement in this report and recommendation.

completed the day of the incident indicated a small scratch on Johnson's left hand and a one-centimeter abrasion on his left elbow with no bleeding or swelling.  (Doc. 105-1 at PAGEID 1329).  Johnson later filed an informal complaint alleging that medical staff was "disrespectful," "ignore[ed] injury on [his] wrist on both hands and how bad the cut [was] on [his] elbow," and failed to supply him with a Band-Aid or ointment.  (Doc. 105-3 at PAGEID 1347).  However, he failed to name the medical staff members as defendants or to "otherwise show that he was injured" more significantly.  *See White*, 2022 WL 554065, at *2.  Under these circumstances, the Court must conclude that plaintiff has failed to offer evidence sufficient to raise a genuine issue of material fact that Lawless used excessive force in violation of the Eighth Amendment. Accordingly, Lawless's motion for summary judgment on Johnson's Eighth Amendment claim should be granted, and Johnson's cross-motion for summary judgment on that claim should be denied.

## IV.    First Amendment Claim

To establish a First Amendment retaliation claim, plaintiff must demonstrate:

(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).  As to the first element, incarcerated people have a First Amendment right to file non-frivolous grievances and lawsuits against prison officials, but an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory."  *Id.* (quoting *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002)).

In his complaint, Johnson alleged, "By threatening plaintiff Johnson with physical violence for exercise of his right to seek redress from the prison through use of the prison grievance system, Defendant Lawless is retaliating against plaintiff Johnson" in violation of the First Amendment.  (Doc. 8 at PAGEID 80).  At the summary judgment stage, Johnson stated under penalty of perjury that he "was already engaged in protected conduct before and after defendant Lawless approached plaintiff cell location for a so call cell search out of retaliation that led to excessive force and a civil action complaint of the instant case, the proof is the documents itself along with the grievance exhaustion."  (Doc. 107 at PAGEID 1428).  Johnson stated in his declaration that during the March 10, 2018 cell search Lawless used "racial slurs" and told Johnson "how I'm not gonna file [a] lawsuit." [4]  (Doc. 111 at PAGEID 1475).  It is difficult to discern the actions Johnson contends to be protected conduct.  If Johnson's protected conduct includes prior grievances against Lawless or other SOCF personnel, Johnson does not identify or offer evidence of any such prior grievances.  Johnson filed a grievance against Lawless on March 12, 2018 (Doc. 105-3 at PAGEID 1342) and the instant lawsuit on February 24, 2020 (Doc. 1) regarding the March 10, 2018 incident.  However, the March 10, 2018 cell search could not have occurred in retaliation for the March 12, 2018 grievance or the February 2020 lawsuit, as that protected activity had not yet happened.  Therefore, Johnson has failed to satisfy the first element of his retaliation claim, i.e., that he engaged in protected conduct.

The second element requires proof of an adverse action taken against Johnson that would deter a person of ordinary firmness from continuing to engage in the protected conduct.  While "some adverse actions are so *de minimis* that they do not rise to the level of a constitutionally cognizable injury," "'unless the claimed retaliatory action is truly "inconsequential," the

---

[4] Although the search was videorecorded, the video has no audio component so the Court must rely on the parties' statements as to the words exchanged during the cell search and pat down.  (Doc. 95, DVR 109-18).

plaintiff's claim should go to the jury.'"  *Maben*, 887 F.3d at 266 (quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)).  Retaliatory cell searches and seizure or destruction of an inmate's legal papers or property satisfy the adverse action requirement.  *Id.* at 267; *Bell*, 308 F.3d at 604.

Lawless argues that the March 10, 2018 cell search did not deter Johnson from engaging in First Amendment activity, including filing a grievance against Lawless two days later, filing this action, and filing four additional lawsuits against various corrections personnel.  (Doc. 105 at PAGEID 1304).  However, the Sixth Circuit has considered and rejected that argument.  *See Bell*, 308 F.3d at 606 ("The relevant question is whether the defendants' actions are '*capable* of deterring a person of ordinary firmness;' there is no requirement that the plaintiff show actual deterrence.") (quoting *Thaddeus-X*, 175 F.3d at 398).

The third element requires plaintiff to demonstrate that the adverse action—the allegedly retaliatory cell search—was motivated at least in part by plaintiff's protected conduct.  *Maben*, 887 F.3d at 264.  If the alleged retaliatory action occurred in close temporal proximity to the protected conduct, the timing alone may be "significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive."  *Id.* at 268 (quoting *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004)).  Once a plaintiff establishes that his protected conduct was a motivating factor for the adverse action, the burden of production shifts to defendant.  *Id.* at 267.  "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment."  *Id.* (quoting *Thaddeus-X*, 175 F.3d at 399).

Because Johnson has failed to identify or offer evidence of the conduct he claims to be protected, the Court has no way to determine whether or not the protected conduct was a

11

motivating factor in the alleged retaliatory cell search. Therefore, the burden of production does not shift to defendant in this case.[5] Accordingly, defendant is entitled to summary judgment on plaintiff's First Amendment claim.

### V.    Qualified Immunity

Lawless contends that he is entitled to sovereign immunity as to the official capacity claims and qualified immunity as to the individual capacity claims. (Doc. 105 at PAGEID 1306-07). "The Eleventh Amendment protects a state official from suit for monetary damages in his or her official capacity because 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.'" *Zakora v. Chrisman*, 44 F.4th 452, 474 (6th Cir. 2022) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Therefore, state defendants are immune from suit for monetary damages in their official capacities. *Id.* at 475. Accordingly, Lawless, as a state corrections officer, is immune from suit for monetary damages in his official capacity.

As to individual capacity claims, "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Murray v. Dep't of Corrections*, 29 F.4th 779, 786 (6th Cir. 2022) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1986)). To avoid a finding of qualified immunity at the summary judgment stage, a plaintiff must demonstrate: "(1) 'that government officials violated a constitutional right,' and (2) 'that the unconstitutionality of their conduct was clearly established when they acted.'" *Id.* (quoting *Beck v. Hamblen Cty.*, 969 F.3d 592, 598 (6th Cir.

---

[5] Defendant Lawless stated in his discovery responses that he and Bailey decided to conduct the March 10, 2018 cell search because they "had suspicions that Inmate Johnson was in process of moving and/or hiding contraband." (Doc. 104-2 at PAGEID 1271).

2020)).  As explained above, Johnson has failed to demonstrate that Lawless violated a

constitutional right.  Accordingly, Lawless is entitled to qualified immunity on plaintiff's claims.

**IT IS THEREFORE RECOMMENDED THAT:**

1.  Defendant's motion for summary judgment (Doc. 105) be **GRANTED**.

2.  Plaintiff's memoranda construed as a cross-motion for summary judgment (Doc. 107) be
    **DENIED**.

Date: 2/14/2023

Karen L. Litkovitz
United States Magistrate Judge

13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MICHAEL L. JOHNSON,                                  Case No. 1:20-cv-157
    Plaintiff,

                             Hopkins, J.
    vs.                                                  Litkovitz, M.J.

BRYAN LAWLESS,
    Defendant.                                   .

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

14